UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ADVANCED KNOWLEDGE TECH, LLC,

                            Plaintiff,

      -against-

                                                21-cv-992 (PKC)

                                                OPINION AND ORDER

MARCELLO FLEITAS,

                            Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        In this diversity action, plaintiff Advanced Knowledge Tech, LLC ("AKT") seeks to hold defendant Marcello Fleitas, the Managing Member and Director of Ubergig, LLC ("Ubergig"), liable for unpaid services rendered to a client of Ubergig's known as Hello Elephant.[1] AKT provides consulting services in the field of information technology. The businesses of Ubergig and Hello Elephant are not described in the Amended Complaint. Ubergig is not a party to this action and is alleged to have filed for Chapter 7 bankruptcy protection in October 2020. (Am. Compl't ¶ 35.)

        AKT asserts claims against Fleitas for common law fraud, negligent misrepresentation, unjust enrichment, conversion and veil piercing and Fleitas has moved, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss each claim. For reasons that will be

---

[1] AKT, a limited liability company, is alleged to have two members both of whom are domiciled in Texas and the sole defendant Fleitas is domiciled in New York. (Am. Compl't ¶¶ 2–3.) The amount in controversy exceeds the jurisdictional threshold. (Am. Compl't, ¶ 33.) This Court has subject matter jurisdiction. 28 U.S.C. §1332(a).

explained, the motion will be granted as to all claims except the fraud and negligent misrepresentation claims.

BACKGROUND

For the purposes of the motion, the Court accepts the well-pleaded factual allegations of the Amended Complaint as true, drawing all reasonable inferences in favor of the non-movant, AKT.

AKT alleges that on January 3, 2020 it entered into an agreement with Ubergig to provide IT consulting services to Ubergig's client, Hello Elephant. (Am. Compl't ¶¶ 8, 11.) AKT alleges that Ubergig "immediately defaulted" under the agreement and failed to pay invoices from January 2020 until October 2020. (Am. Compl't ¶ 12.) In October 2020, AKT ceased rendering services when it learned that Ubergig had filed for bankruptcy protection. (Id.)

Prior to AKT's agreement with Ubergig, Fleitas told AKT's President Peter Boyapati that Ubergig would pay AKT for the consulting services and that Ubergig was a financially viable company and had sufficient funds to make full payment to AKT. (Am. Compl't ¶¶ 8–9.) AKT alleges that Fleitas knew that these statements were false and made these statements with the intent to induce AKT to rely on them in entering into the agreement with Ubergig. (Am Compl't ¶ 10.) AKT further alleges that "at the time of [Fleitas's] statements and the formation of the contract, and at all times thereafter," Ubergig was insolvent, lacked the ability to pay AKT for services rendered and had no intention to pay AKT for those services. (Am. Compl't ¶ 13.) AKT claims that Fleitas knew those facts and intentionally withheld those facts from AKT before it agreed to provide and provided services to Hello Elephant (Am. Compl't ¶¶ 13–14.)

The Amended Complaint asserts that Hello Elephant paid Ubergig for the services rendered by AKT but instead of remitting the funds to AKT, Fleitas "converted and misappropriated such monies, using them for his own personal and financial gain." (Am. Compl't ¶ 34.)

AKT identifies nine e-mails exchanged between Fleitas and Boyapati between May 19, 2020 and September 3, 2020 wherein Fleitas is alleged to have made various representations related to Ubergig's funding rounds and its intention to make payments to AKT forthwith. (Am. Compl't ¶¶ 16(a)–(i).) AKT claims that Fleitas's purpose was to induce AKT's continued performance under the agreement, even though AKT had not been paid. (Am. Compl't ¶ 17.)

AKT also alleges that defendant and Boyapati engaged in "frequent and ongoing phone calls" between May and October 2020. (Am. Compl't ¶ 16(j).) During the phone discussions, Fleitas continued to make false statements with respect to Ubergig's solvency, funding and intention and ability to pay AKT in accordance with the agreement. (Id.) AKT claims that Fleitas's intent was to fraudulently induce AKT to continue rendering consulting services to Hello Elephant, and that it did indeed continue to provide services to Hello Elephant during this time in reliance on Fleitas's misrepresentations. (Am. Compl't ¶¶ 17–18.)

Based on these allegations, AKT brings claims against Fleitas for fraud, negligent misrepresentation, unjust enrichment and conversion, and also brings an action seeking to pierce the corporate veil and disregard limited liability such that claims may be brought against Fleitas as an individual.

PROCEDURAL HISTORY

One point of procedural history is relevant to the motion.  After a motion to dismiss was filed by Fleitas (Doc 12), AKT expressed a desire to amend its complaint to bolster certain claims and to address certain deficiencies in its jurisdictional allegations.  (Doc 18).  The motion to dismiss was deemed withdrawn and AKT proceeded to file the Amended Complaint (Doc 20) to which the present motion is addressed.  (See Minute Entry, May 24, 2021.)  Armed with full knowledge of the arguments of Fleitas, the present pleading presumably represents AKT's strongest and best effort to state actionable claims.

DISCUSSION

A.      Rule 12(b)(6) Standard.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must disregard purely legal conclusions that are framed as factual allegations, as these legal conclusions are not entitled to the presumption of truth. Id.; see also Smith v. Loc. 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (quotation marks omitted).  Rather, the Court must consider the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  "Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions."  Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the

plaintiff's claims are barred as a matter of law'." Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

B.  AKT States a Claim for Fraud.

New York law draws a distinction between a claim that a contracting party did not intend to honor its contractual commitments, which is not actionable fraud but duplicative of a breach of contract claim, and a claim of a "preconceived and undisclosed intention of not performing" the contract. Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956–57 (1986). The distinction was well-described by the Appellate Division, First Department:

> A fraud-based cause of action is duplicative of a breach of contract claim "when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract" . . . . A fraud-based cause of action may lie, however, where the plaintiff pleads a breach of a duty separate from a breach of the contract. Thus, where the plaintiff pleads that it was induced to enter into a contract based on the defendant's promise to perform and that the defendant, at the time it made the promise, had a "preconceived and undisclosed intention of not performing" the contract, such a promise constitutes a representation of present fact collateral to the terms of the contract and is actionable in fraud . . . .

Mañas v. VMS Assocs., LLC, 53 A.D.3d 451, 453–54 (1st Dep't 2008)(internal citations omitted).

AKT's fraud claim is not duplicative of a breach of contract claim because it is asserted against Fleitas who is sued in his individual capacity and is not a party to the contract. For example, in Forty Cent. Park S., Inc. v. Anza, 130 A.D.3d 491, 492 (1st Dep't 2015), the Court upheld a claim against the manager of an LLC who had induced the plaintiff to enter into an agreement with the LLC based upon false representations relating to future performance

under the agreement. The New York Court concluded that the claim was not duplicative of a separate breach of contract claim that had been asserted against the LLC. Id. As a preliminary matter, the Court concludes that fraud claim against Fleitas is not duplicative of a breach of contract claim.

Turning to the sufficiency of AKT's allegations, the Court concludes they adequately state a claim against Fleitas for fraudulently inducing AKT to enter into an agreement with Ubergig.[2] Under New York law, a claim of fraudulent inducement requires proof of "(1) material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015); see Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016).

The Amended Complaint alleges that before the formation of the contract Fleitas represented that "Ubergig would pay Plaintiff for its consulting services . . . and that Ubergig had sufficient funds to pay Plaintiff" when Fleitas allegedly knew that "Ubergig could not pay Plaintiff and had no intention of doing so." (Am. Compl't ¶¶ 9–10.) These allegations are sufficient to meet the "preconceived and undisclosed intention of not performing" standard laid out by the New York Court of Appeals. Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d at 956–57 (quoting Sabo v. Delman, 3 N.Y.2d 155, 160 (1957).)

AKT also alleges that in the period of May 2020 through September 2020 Fleitas made additional representations that it relied upon in continuing its performance under the agreement. (See, e.g., Am. Compl't ¶¶16(a)–(j).) But there was a complete and actionable fraud when Fleitas's pre-contractual statements were made, relied upon and first caused damage. The

---

[2] AKT's memorandum clarifies that AKT's fraud claim is in essence a claim that defendant fraudulently induced AKT's entry into and continued performance under the agreement. (See Pl.'s Mem. in Opp. at 4–6.)

Amended Complaint adequately alleges that AKT's continued performance and the subsequent instances of non-payment by Ubergig were proximately caused by the original and continuing fraud.

Fleitas also argues that the allegations in the Amended Complaint do not satisfy the particularity requirement of Rule 9(b), Fed. R. Civ. P. To satisfy the rule, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). To establish scienter, plaintiff must allege facts that give rise to a "strong inference of fraudulent intent", Loreley Fin., 797 F.3d at 170, which can be established by (1) alleging facts which establish that defendant had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Lerner, 459 F.3d at 290.

The Amended Complaint identifies the statements made by Fleitas in the period leading up to the January 3, 2020 agreement and during the course of performance of the agreement. For each statement, AKT alleges that Fleitas was the speaker. (See Am. Compl't ¶¶ 8, 9, 16(a)–(j).) AKT also alleges the content of the statement and explains why it is fraudulent. For example, AKT alleges that Fleitas falsely represented that "Ubergig was a financially viable company", (Am. Compl't ¶ 8), and explains that this was a fraudulent representation because "Ubergig, at the time of Defendant's statements and the formation of the contract, and at all times thereafter, was insolvent", (Am. Compl't ¶ 13), and Fleitas "at all times, knew [that Ubergig was insolvent]", (Am. Compl't ¶ 14). As another example, AKT alleges that Fleitas fraudulently represented in an e-mail dated May 25, 2020 that Ubergig "would make outstanding

payments in a 'small amount of time'", (Am. Compl't ¶ 16(b)), and explains that this was fraudulent because Fleitas had "full knowledge that Ubergig would not be making payment", (Am. Compl't ¶ 17).

AKT also sufficiently alleges facts that give rise to a strong inference of fraudulent intent, including a motive and opportunity to defraud AKT. AKT asserts that when Hello Elephant remitted payment for services, including those rendered by AKT, to Ubergig, Fleitas "us[ed] [those payments] for his own personal and financial gain." (Am. Compl't ¶ 34).

To summarize, the Court concludes that AKT's fraud claim against Fleitas is not duplicative of any claim AKT may have against the contracting party, Ubergig. It adequately alleges all elements of a fraudulent inducement claim, including that Fleitas knew that "Ubergig could not pay Plaintiff and had no intention of doing so." (Am. Compl't ¶¶ 9–10.) And, AKT alleges fraud with particularity and alleges facts that create a strong inference that Fleitas had the motive and opportunity to defraud AKT. Accordingly, AKT has stated a fraud claim against Fleitas.

C.   AKT Adequately States a Claim for Negligent Misrepresentation.

AKT's second claim alleges negligent misrepresentation by Fleitas, incorporating its allegations regarding the fraud claim. (Am. Compl't ¶ 54.)[3] Fleitas's motion to dismiss the negligent misrepresentation claim will be denied.

"[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation

---

[3] "Claims of negligent misrepresentation must also be pled with particularity if based on the same set of facts as intentional fraud claims." Amusement Industry, Inc. v. Stern, 786 F.Supp.2d 758, 771 (S.D.N.Y. 2011) (citing Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V., 676 F.Supp.2d 100, 110 (E.D.N.Y. 2009)). The Court has already concluded that the fraud claims meet the Rule 9(b) standard.

is justified." Kimmell v. Schaefer, 89 N.Y.2d 257, 263 (1996).  Where the pleading only reveals "an arm's length business arrangement between sophisticated and experienced parties," a "special relationship" is not present, and the negligent misrepresentation claim will be dismissed. Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d 758, 779 (S.D.N.Y. 2011) (Kaplan, J.) (collecting cases).  The nature of the special relationship must imply "a close degree of trust between the plaintiff and the defendant."  WIT Holding Corp. v. Klein, 282 A.D.2d 527, 529 (2d Dep't 2001).

Kimmell laid out the factors in determining whether the nature of a relationship between parties is capable of supporting a negligent misrepresentation claim. "In determining whether justifiable reliance exists in a particular case, a fact finder should consider [1] whether the person making the representation held or appeared to hold unique or special expertise; [2] whether a special relationship of trust or confidence existed between the parties; and [3] whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." 89 N.Y.2d at 263–64.  See also Suez Equity Investors, L.P. v. Toronto–Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001)(quoting the Kimmell factors).

AKT has alleged a five-year commercial relationship consisting of it providing IT services to Ubergig or Ubergig's clients.  (Am. Compl't ¶ 27.)  Fleitas spoke with someone at AKT about 2 or 3 times a month about consulting projections and payment. (Am. Compl't ¶ 29.) At some point, there was a discussion of the particular AKT consultant who would work on a particular project. (Am. Compl't ¶ 28.)  Insofar as the Amended Complaint reveals, Ubergig's role was to receive services from AKT and pay for them.  Perhaps Ubergig and Fleitas relied on AKT's special expertise in the IT field, but it is the expertise of the putative fraud-doer that is relevant.  AKT's allegations of a "special privity-like relationship" or a "close trust and

confidence", (Am. Compl't ¶¶ 26, 55), are conclusory allegations, legal labels, not accorded the presumption of truth.

AKT fares better on the third circumstance outlined in Kimmell, "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose . . . ." Kimmell, 89 N.Y.2d at 264.  The Amended Complaint plausibly alleges that Fleitas knew that AKT would rely on his representations concerning Ubergig's financial condition in deciding whether to do business with it and made the representations for that very purpose.  The Court has already held that the pleading plausibly alleges, among other things, a false statement made with knowledge of falsity on which AKT reasonably relied.  At the pleading stage, the Court will allow the negligent misrepresentation claim to stand.

D.  AKT's Unjust Enrichment Claim is Duplicative of the
    Fraud and Negligent Misrepresentation Claims.

Fleitas next moves to dismiss AKT's unjust enrichment claim.  To state a claim for unjust enrichment under New York law, a plaintiff must allege that: "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."  Clifford R. Gray, Inc. v. LeChase Construction Services, LLC, 31 A.D.3d 983, 988 (3d Dep't 2006); see also Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).  Nevertheless, a claim of unjust enrichment will not be available "where it simply duplicates, or replaces, a conventional contract or tort claim."  Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F.Supp.3d 467, 483 (S.D.N.Y. 2014) (citing Corsello v. Verizon N.Y., Inc., 19 N.Y.3d 777, 790 (2012)).  Indeed, "unjust enrichment is not a catchall cause of action to be used when others fail."  Corsello, 18 N.Y.3d at 790.  Rather, "unjust enrichment under New York law is an equitable claim that is

unavailable where an adequate remedy at law exists." In re Gen. Motors LLC Ignition Switch Litig., 257 F.Supp.3d 372, 433 (S.D.N.Y. 2017) (internal quotations omitted).

AKT makes no factual allegations unique to the unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from the fraud and negligent misrepresentations claims. (See generally Am. Compl't.) Rather, AKT merely realleges the factual allegations that form the basis of the fraud and negligent misrepresentation claims, and generally alleges that Fleitas "has been unjustly enriched by and through his fraudulent misrepresentations, concealments, conversion of funds belonging to Plaintiff, and other acts[.]" (Am. Compl't ¶ 62.) An unjust enrichment claim that is indistinct from a contract or tort claim should be dismissed. See, e.g., Cont'l Indus. Grp., Inc. v. Altunkilic, No. 14 Civ. 790, 2018 WL 1508566, at *9 (S.D.N.Y. Mar. 27, 2018) ("Where Plaintiff has 'fail[ed] to explain how [its] unjust enrichment claim is not merely duplicative of their other causes of action,' it is not cognizable." (citations omitted)); In re Gen. Motors, 257 F.Supp.3d at 433 ("Plaintiffs' unjust enrichment claims fail . . . [b]ecause they have adequate remedies at law . . . . '[T]he accusations surrounding the plaintiff's unjust enrichment claim overlap with her fraud, fraudulent concealment, express warranty, and [Section] 349 claims, all of which may proceed. She therefore may not bring an unjust enrichment claim as a catch-all cause of action'." (citations omitted)); Sitt v. Nature's Bounty, Inc., No. 15 Civ. 4199, 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) ("Because Plaintiff's unjust enrichment claims under New York law are based on the same allegations as her claims of violations of GBL sections 349 and 350 and breach of express warranty under New York law, and because Plaintiff has not shown how her unjust enrichment claim differs from her other New York claims, Plaintiff's unjust enrichment claim . . . is duplicative.").

Fleitas's motion to dismiss the unjust enrichment claim will be granted.

E.     AKT Fails to State a Claim for Conversion.

The fourth count of the Amended Complaint alleges that Fleitas "converted monies due to Plaintiff" by depriving AKT of possession of the funds that Hello Elephant remitted to Ubergig intended for payment for AKT's consulting services. (Am. Compl't ¶¶ 64–70.) AKT's conversion claim fails to state a claim for relief under New York law.

Under New York law, "[i]n order to establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." World Ambulette Transp. v. Kwan Haeng Lee, 161 A.D.3d 1028, 1030–31 (2d Dep't 2018); see also Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A., 481 F. App'x 622, 627 (2d Cir. 2012) (summary order). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's right." Pappas v. Tzolis, 20 N.Y.3d 228, 234 (2012).

When a conversion claim relates to the conversion of money, "[i]t is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." Global View Ltd. Venture Capital v. Great Central Basin Exploration, LLC, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (quoting Mfrs. Hanover Trust Co. v. Chem. Bank, 160 A.D.2d 113, 124 (1st Dep't 1990)). To state a claim for conversion of money, the money must be "specifically identifiable and segregated," Mfrs. Hanover Trust Co., 160 A.D.2d at 124, and "described or identified in the same manner as a specific chattel." Global View Ltd. Venture

Capital, 288 F. Supp. 2d at 480 (quoting 9310 Third Ave. Assocs., Inc. v. Schaffer Food, 210 A.D.2d 207 (2d Dep't 1994)). "[A] conversion claim for money only survives if plaintiff had 'ownership, possession or control of the money' prior to the conversion . . . [and] [a]n obligation to be paid does not equate to a plaintiff's ownership, possession or control of the money in question." Heap v. CenturyLink, Inc., No. 18 Civ. 1220, 2020 WL 1489801, at *18 (S.D.N.Y. Mar. 27, 2020).

AKT's conversion claim relates to funds paid by Hello Elephant to Ubergig for services rendered by AKT, which Fleitas allegedly misappropriated for personal use instead of paying AKT for the services rendered. Nevertheless, AKT fails to allege that there is a "specific, identifiable fund" wherein the monies due to AKT were held. Global View Ltd. Venture Capital, 288 F. Supp. 2d at 479. Indeed, AKT makes no allegations in the Amended Complaint that the monies were segregated or otherwise specifically identifiable from other monies held by Ubergig and/or remitted from Hello Elephant. AKT takes no steps in the Amended Complaint to describe or specifically identify the funds – the most the Amended Complaint does in this respect is state that "among the monies received by Ubergig [from Hello Elephant] were specific monies meant for Plaintiff." (Am. Compl't ¶ 65.) Such an allegation is insufficient to satisfy the requirement that a claim for conversion of money identify and describe the converted funds with specificity.

As an alternative ground for dismissal of the conversion claim, AKT does not allege that it had "ownership, possession or control of the money" prior to Fleitas's conversion. Heap, 2020 WL 1489801, at *18. Rather, AKT alleges that Hello Elephant remitted funds to Ubergig and then Fleitas allegedly improperly failed to pay those funds to AKT and instead used the funds for personal use – but the Amended Complaint contains no allegations that AKT possessed, controlled or otherwise owned the money before Fleitas allegedly misappropriated it

for personal use.  Such allegations are insufficient to support a claim of conversion.  Accordingly, Fleitas's motion to dismiss the conversion claim will be granted.

F.      New York Does Not Recognize a Stand-Alone Claim for Veil Piercing.

As its fifth cause of action, AKT alleges "Intentional Misrepresentation and Fraudulent Misuse of the Corporate Veil, Alter Ego and Undercapitalization."  (Am. Compl't ¶¶ 71–77.)  "New York does not recognize an independent cause of action to pierce the corporate veil; rather, 'it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners'."  Morris v. New York State Dep't of Tazation & Fin., 82 N.Y.2d 135, 141 (1993); see also Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 478 (S.D.N.Y. 2009).

AKT alleges that "as a result of [Fleitas's] fraudulent and improper actions, any corporate veil limiting liability that may exist for the alleged entity, Ubergig, must be pierced as a matter of law exposing [Fleitas] for his actions." (Am. Compl't ¶ 76.)  But no corporate veil precludes AKT's fraud and negligent misrepresentation claims that are asserted directly against Fleitas, and not Ubergig.  No contract claim has been asserted against Fleitas on the agreement between AKT and Ubergig.  The veil piercing claim will be dismissed because it is presented as a stand-alone claim and also because it is wholly inapplicable to the only surviving claims in the Amended Complaint that are asserted directly against Fleitas.


CONCLUSION

The motion of Fleitas to dismiss the Amended Complaint is GRANTED with respect to the unjust enrichment, conversion claims and veil piercing claims and DENIED with

respect to the fraudulent inducement and negligent misrepresentation claims. The Clerk is respectfully directed to terminate the motion (Doc 23).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
December 28, 2021